THE PEOPLE *ex rel.* MICHAEL J. WALLER, Plaintiff-Appellee, v. 1992 OLDSMOBILE STATION WAGON, VIN IG3BP8376NW300058, Defendant (Walter Sims, Claimant-Appellant).

Second District   No. 2—93—0485

Opinion filed July 20, 1994.—Rehearing denied August 25, 1994.

Salvatore C. Miglore and Robert E. Kall, both of Salvatore C. Miglore & Associates, of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (James K. Simonian, Assistant State's Attorney, and William L. Browers, Lisa A. Hoffman, and

Mary Beth Burns, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Claimant, Walter Sims, appeals the circuit court's order forfeiting a 1992 Oldsmobile pursuant to section 36—1 of the Criminal Code of 1961. (Ill. Rev. Stat. 1991, ch. 38, par. 36—1 (now 720 ILCS 5/36—1 (West 1992)).) Sims contends that section 36—1 is unconstitutional because it grants judicial power to the Attorney General and because it vests judicial functions in the executive, rather than the judicial, branch, in violation of the separation of powers provisions of the Illinois Constitution. (Ill. Const. 1970, art. VI, § 1.) Sims also contends that the forfeiture in this case amounts to an excessive fine in violation of the eighth amendment to the United States Constitution (U.S. Const., amend. VIII).

The parties below stipulated to the relevant facts. On November 24, 1992, Walter Sims and his son, Tom Sims, drove to the commissary at Fort Sheridan. At 9:12 a.m., Tom Sims bought 10 cartons of cigarettes. At 9:19 a.m., Walter Sims bought 10 cartons of cigarettes. At 9:55 a.m., Tom Sims bought 10 more cartons of cigarettes at a different check-out counter. At 10:11 a.m., Walter Sims bought 10 cartons of cigarettes at that check-out counter. None of the cigarette packs bore a tax stamp.

As the Simses left Fort Sheridan, a police officer stopped their car, the 1992 Oldsmobile station wagon which is the subject of this action. Police recovered from the Oldsmobile 40 cartons of cigarettes, none of which contained tax stamps. In the front seat, police found a list of names and cigarette brands and $1,548.

After an unsuccessful motion to suppress and a stipulated bench trial, the court convicted Walter Sims of one count of possession with the intent to offer for sale untaxed cigarettes (Ill. Rev. Stat. 1991, ch. 120, par. 453.24 (now 35 ILCS 130/24 (West 1992))). The State's Attorney then sought the forfeiture of Sims' car under section 36—1. The court ordered the forfeiture and Sims appeals.

●1 Section 36—1 provides in relevant part:

"Any vessel, vehicle or aircraft used with the knowledge and consent of the owner in the commission of *** an offense prohibited by *** Section 21, 22, 23, 24 or 26 of the Cigarette Tax Act if the vessel, vehicle or aircraft contains more than 10 cartons of such cigarettes *** may be seized and delivered forthwith to the sheriff of the county of seizure." (Ill. Rev. Stat. 1991, ch. 38, par. 36—1 (now 720 ILCS 5/36—1 (West 1992)).)

Sims contends that section 36—1 is unconstitutional because it grants

judicial power to the Attorney General and vests discretion in the executive branch. Sims makes the additional argument that the forfeiture in this case is an excessive penalty. He develops this argument further in his reply brief, arguing specifically that the forfeiture is an excessive fine in violation of the eighth amendment. He cites *Austin v. United States* (1993), 509 U.S. 602, 125 L. Ed. 2d 488, 113 S. Ct. 2801, which was decided one month before Sims filed his initial brief. Because we find this issue dispositive, we consider it first.

●2 In *Austin*, the Supreme Court held that *in rem* civil forfeiture proceedings under section 511(a) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. § 881(a) (1988)) are subject to the eighth amendment's excessive fines clause. In *Austin*, defendant engaged in a drug transaction involving two grams of cocaine. Police obtained a search warrant for his mobile home and auto body shop. In each location they recovered small quantities of drugs and drug paraphernalia. After Austin pleaded guilty to drug charges in a South Dakota State court, the Federal government obtained the forfeiture of his home and business. (*Austin*, 509 U.S. at 604-05, 125 L. Ed. 2d at 494, 113 S. Ct. at 2803.) The United States Court of Appeals for the Eighth Circuit "reluctantly" affirmed the forfeiture, despite its belief that "the principle of proportionality is a deeply rooted concept in the common law" and that "as a modicum of fairness, the principle of proportionality should be applied in civil actions that result in harsh penalties." *United States v. One Parcel of Property* (8th Cir. 1992), 964 F.2d 814, 817.

After tracing the historical development of civil forfeiture provisions, the Supreme Court concluded that an *in rem* civil forfeiture is a form of punishment as contemplated by the eighth amendment. (*Austin*, 509 U.S. at 619, 125 L. Ed. 2d at 503, 113 S. Ct. at 2810.) The court, however, declined to establish specific standards to determine whether a forfeiture is "excessive" in a particular case. Instead, the court remanded the cause to the lower courts for consideration of this issue. Justice Scalia, concurring, concluded that the critical inquiry is not the value of the property seized, but its connection to the criminal activity. If there is no substantial nexus between the property and the crime, the property is not forfeitable. *Austin*, 509 U.S. at 625, 125 L. Ed. 2d at 509, 113 S. Ct. at 2815 (Scalia, J., concurring).

It seems clear that *Austin* applies to this case. The forfeiture statute at issue is identical in critical respects to that considered in *Austin*. Because newly announced rules of constitutional law are to be applied to cases pending on direct review (*Griffith v. Kentucky* (1987), 479 U.S. 314, 322-23, 93 L. Ed. 2d 649, 658, 107 S. Ct. 708,

713), we must consider the application of the Supreme Court's decision to this case.

Initially, since Sims does not argue to the contrary, we presume that the car is forfeitable because it did facilitate the offense. A vehicle is subject to forfeiture under section 505(a)(3) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56¹/₂, par. 1505(a)(3) (now codified, as amended, at 720 ILCS 570/505(a)(3) (West 1992))) if it in any way makes the commission of the offense less difficult. (*People v. 1988 Mercury Cougar* (1992), 154 Ill. 2d 27, 32. But see *People v. One 1986 White Mazda Pickup Truck, VIN JM2UF1118G0577930* (1993), 251 Ill. App. 3d 79, 82-83 (vehicle did not facilitate possession of controlled substance where cocaine was completely hidden in suspect's pants pocket and his fortuitous location in vehicle at time of arrest afforded no additional aspect of privacy).) In this case, it is undisputed that Sims and his son both drove to the Fort Sheridan commissary in the subject vehicle and used it to transport the cigarettes away from the commissary. (See *People v. One 1990 Chevrolet Suburban, VIN 1GNER16K7LF1628* (1992), 239 Ill. App. 3d 815.) The car in this case appears to meet the extremely broad definition of "facilitating" the offense established by Illinois precedent.

●3 That the vehicle facilitated the offense does not automatically render it forfeitable. Austin's home and business obviously "facilitated" his drug offenses because authorities found drugs at both locations. Nevertheless, the court vacated the order of forfeiture and remanded the cause to the lower courts to determine whether the penalty was excessive. Clearly, something more is required.

Two of the first cases to apply *Austin* both used Justice Scalia's nexus test as a starting point and found the forfeiture appropriate under the facts. In both *In re King Properties* (1993), ＿＿ Pa. ＿＿, 635 A.2d 128, and *United States v. Certain Real Property Commonly Known as 2828 North 54th Street* (E.D. Wis. 1993), 829 F. Supp. 1071, the property owners had used their homes as the bases of substantial drug operations. Large amounts of drugs and drug paraphernalia were found in both homes. Under these facts, the Pennsylvania Supreme Court and the United States District Court had little trouble in concluding that the forfeiture of the properties was appropriate.

The present case appears to be closer to the situation that troubled the court of appeals, and ultimately the Supreme Court, in *Austin*: valuable property was used to facilitate a relatively minor offense on a single occasion. (Although Sims admitted that he had purchased and resold untaxed cigarettes previously, there was no proof that the Oldsmobile was used in any manner in connection

with those activities.) Moreover, unlike the "drug houses" at issue in *King* and *Certain Real Property*, the vehicle did not facilitate the offenses in a particularly significant way. Sims could just as easily have taken public transportation, or walked, to Fort Sheridan. Unlike cocaine, the possession of cigarettes is not inherently illegal and there is no evidence that Sims used the car to attempt to hide the cigarettes from the police. (*Cf. People v. 1988 Mercury Cougar* (1992), 154 Ill. 2d 27.) It appears from the limited record that all 40 cartons were in plain view in the backseat when Sims was pulled over.

It is therefore inevitable that some consideration of the extent to which the forfeited property facilitated the offense will be relevant to the determination of excessiveness. A related concern is the number of occasions on which the property has been used in connection with illegal activities. We share the concern of the United States Court of Appeals for the Eighth Circuit that "*any* property, whether it be a hobo's hovel or the Empire State Building, can be seized by the government because the owner, regardless of his or her past criminal record, engages in a single drug transaction." (Emphasis in original.) *United States v. One Parcel of Property* (8th Cir. 1992), 964 F.2d 814, 818.

It also appears that some consideration of the value of the property and the relative seriousness of the offense is inevitable. The facts and the result of *Austin* make this conclusion inescapable. The *Austin* majority expressly recognized the concern of the United States Court of Appeals for the Eighth Circuit " 'that the government is exacting too high a penalty in relation to the offense committed,' " and remanded the cause for the lower courts to "consider *that* question." (Emphasis added.) (*Austin v. United States* (1993), 509 U.S. 602, 622, 125 L. Ed. 2d 488, 506, 113 S. Ct. 2801, 2812, quoting *One Parcel of Property*, 964 F.2d at 818.) *Austin*, after all, was decided under the eighth amendment's excessive fines clause. "Excessive" is defined as "exceeding the usual, proper or normal. *** EXCESSIVE implies an amount or degree too great to be reasonable or acceptable." (Webster's Ninth New Collegiate Dictionary 432 (1990).) In a case decided the same day as *Austin*, the Supreme Court expressly approved the consideration of the value of the property in determining whether an *in personam* forfeiture under the Racketeering Influenced and Corrupt Organizations Act was excessive. (*Alexander v. United States* (1993), 509 U.S. 544, 558, 125 L. Ed. 2d 441, 456, 113 S. Ct. 2766, 2776.) We recognize the differing historical underpinnings of *in personam* and *in rem* forfeitures. Theoretically, an *in rem* forfeiture proceeds against the property itself, making the value of

*the property to the owner irrelevant. (See Calero-Toledo v. Pearson Yacht Leasing Co.* (1974), 416 U.S. 663, 683-87, 40 L. Ed. 2d 452, 468-70, 94 S. Ct. 2080, 2091-94.) However, *Austin* expressly recognized that in practical terms an *in rem* forfeiture may constitute a form of punishment of the owner. By definition, a determination of "excessive" punishment includes a consideration of the amount of punishment in relation to the seriousness of the offense: the punishment should fit the crime. We do not mean to imply that a precise mathematical ratio can be established between the seriousness of the owner's involvement in the crime and the value of the property. Rather, each case must be considered on its own facts.

●4 Recognizing a civil forfeiture as a type of punishment indicates that there must be some consideration of the crime committed. Sims argues that the penalty in this case is excessive where he had, variously, 10 or 20 cartons of cigarettes over the limit. (See Ill. Rev. Stat. 1991, ch. 38, par. 36—1 (now 720 ILCS 5/36—1 (West 1992)).) It may be that he had 30 cartons over the limit, depending on whether his son qualifies for a separate 10-carton exemption. In any event, the relative value of the contraband is low. In controlled substance possession cases, Illinois law bases the category of the offense on the amount of the substance possessed. (See 720 ILCS 570/401, 402 (West 1992).) This court has recognized that, in light of *Austin*, forfeiting property in which "nonculpable persons have legitimate ownership interests raises serious constitutional questions." (*People v. 1991 Chevrolet Camaro, VIN 1GFP23E9ML117842* (1993), 251 Ill. App. 3d 382, 388.) If this is so, then the degree of the owner's culpability must also be relevant.

Sims further contends that his personal circumstances—that he is a 69-year-old cancer patient with the sole responsibility of caring for his 48-year-old retarded son—are also relevant. This may also be, for the value of a car may be a pittance to a rich man and a fortune to a poor man. The defendant's ability to pay and "the burden the fine will impose on the defendant and any person legally or financially dependent upon the defendant" are express considerations in determining the amount of a fine under the Illinois Controlled Substances Act. (See 720 ILCS 570/411.1 (b)(1) (West 1992).) Since the Supreme Court has determined that a civil forfeiture may be the functional equivalent of a fine, such considerations should inform that determination as well.

The circuit court never had an opportunity to consider this issue. Moreover, the record as it now exists appears inadequate to a full determination of this question. Therefore, we reverse the order of for-

feiture and remand the cause to the circuit court for further proceedings. Our disposition of this issue makes it unnecessary to consider the remaining issues which Sims raises.

Reversed and remanded.

GEIGER and COLWELL, JJ., concur.